Michael R. Feinberg (SBN 89196)
SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, California 90048-5268
Telephone: (323) 655-4700
E-mail: mrf@ssdslaw.com

David B. Dreyfus, General Counsel (199403)
Michelle Kim, Assistant General Counsel (291061)
DIRECTORS GUILD OF AMERICA, INC.
7920 Sunset Boulevard
Los Angeles, California 90046-0907
Telephone: (310) 289-5356
E-mail: ddreyfus@dga.org
E-mail: mkim@dga.org

Attorneys for Petitioner, Directors
Guild of America, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTORS GUILD OF AMERICA, INC., <br><br> Petitioner, <br><br> vs. <br><br> VOLTAGE PICTURES, LLC; and VOLTAGE PRODUCTIONS, LLC, <br><br> Respondents. | **CASE NO. 2:20-cv-4318** <br><br> **PETITION FOR ORDER COMPELLING ARBITRATION PURSUANT TO COLLECTIVE BARGAINING AGREEMENT** <br><br> **[28 U.S.C. § 1331; 29 U.S.C. §185(a); 9 U.S.C. § 4]** |

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the agreement to arbitrate is part of a collective bargaining agreement, which is governed by Section 301(a) of the Labor-Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185(a), and because this is an action pursuant to Section 301(a) to compel arbitration of a dispute between Petitioner Directors Guild of America, Inc. (the "DGA" or the "Guild") and Respondents Voltage Pictures, LLC and Voltage Productions, LLC ("Respondents" or "Voltage") concerning a grievance filed by the DGA over Respondents' refusal to permit access for an audit of Respondents' books and records as required by the collective bargaining agreement.  Further, this Court has jurisdiction over an action to enforce the parties' arbitration agreements under the Federal Arbitration Act, 9 U.S.C. § 4.  Thus, this Court has jurisdiction under 29 U.S.C. §185(a), 28 U.S.C. §1331 and 9 U.S.C. § 4.

2.      Venue is proper in this District pursuant to 29 U.S.C. §185(c) and 28 U.S.C. § 1391(b)(2).  Petitioner DGA's offices are in Los Angeles and it represents DGA members throughout the Central District of California, including those performing services for Respondents and the Employers whose contractual performances Respondents have guaranteed.  In addition, the dispute arose within the Central District, a substantial part of the events or omissions giving rise to the claim occurred in the Central District, and the governing collective bargaining agreement provides that arbitrations of disputes thereunder shall take place in Los Angeles, California, within the Central District. (Exhibit "A," Section 2-305)

## PARTIES

3.      Petitioner DGA is a non-profit corporation duly organized and existing pursuant to the laws of the State of California.  DGA is a "labor organization" representing employees for the purposes of collective bargaining within the meaning of Section 2(5) of the National Labor Relations Act ("NLRA"),

29 U.S.C. §152(5).  The DGA is the duly recognized collective bargaining representative of employees, more specifically, directors, assistant directors and unit production managers, engaged in the production of theatrical motion pictures and television programs, in an industry affecting commerce within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185(a).

4.     The DGA and various employers (Producers) entered into a collective bargaining agreement known as the Directors Guild of America Basic Agreement ("Basic Agreement" or "BA"), which includes grievance and arbitration provisions.  The collective bargaining agreements applicable to this matter are the Basic Agreements of 2005, 2008, 2011, 2014 and 2017.  The grievance and arbitration provisions of these five successive collective bargaining agreements remained substantively the same throughout this period.  A true and correct copy of the grievance and arbitration provisions of the 2017 Basic Agreement, operative at the time arbitration was demanded herein, is attached hereto and incorporated herein as Exhibit "A."

5.     Respondents Voltage Pictures, LLC and Voltage Productions, LLC are signatory to theatrical guaranty agreements with the DGA under which they guaranteed certain film producers' "performance of all terms and obligations under the [Basic Agreement]" with regard to certain film projects or titles.  The specific Respondent acting as guarantor for each respective title is listed in Appendix to Exhibit "B" hereto.  True and correct copies of Respondents' Guaranty Agreements with the DGA are attached hereto and incorporated herein as Exhibits "C" through "H."

6.     Respondents are guarantors of certain "employers" in an industry affecting commerce within the meaning of Section 2(2) of the NLRA, 29 U.S.C. §152(2).  Respondent Voltage Pictures, LLC is now and, at all times material herein, has been a corporation operating under the laws of the State of California and authorized to do and doing business in the County of Los Angeles, State of

1  California.  The DGA is informed and believes, and thereupon alleges, that
2  Respondent Voltage Productions, LLC, is now and, at all times material herein, has
3  been a corporation operating under the laws of the State of Nevada, doing business
4  in the County of Los Angeles, State of California.

5  **PETITION**

6      7.    Article 2 of the 2017 Basic Agreement, entitled "Disputes," sets forth
7  a grievance and arbitration procedure to resolve any and all disputes relating to the
8  Basic Agreement.  Section 2-101 ("Arbitrability") states:

9      The following matters shall be subject to arbitration: All grievances,
10      disputes or controversies over the interpretation or application of the
11      BA…. (See Exhibit "A" hereto)

12      8.    On December 28, 2018, the DGA, Screen Actors Guild, Inc. –
13  American Federation of Television and Radio Artists, and the Writers Guild of
14  America, West, Inc. (collectively, "Tri-Guild") sent a letter to Respondents
15  announcing a Tri-Guild audit of Voltage Pictures, LLC and Voltage Productions,
16  LLC.

17      9.    Despite written demand by the DGA, Respondents have refused and
18  continue to refuse to provide the DGA's auditors with access to, and make
19  available, its books and records which pertain to Respondents' obligations under
20  the Basic Agreement to report and pay residuals for exploitation of certain motion
21  picture titles in various markets and territories.  Respondents have steadfastly
22  refused to cooperate on any level whatsoever with the DGA's auditors, making
23  them outliers in the industry.

24      10.    On August 30, 2019, the DGA grieved Respondents' failure to
25  provide audit access for the books and records related to the motion pictures listed
26  //
27  //
28  //

4

in Appendix A to the grievance.[1]  A true and correct copy of said grievance is attached hereto as Exhibit "B."  Respondents' actions and inaction are breaches of Sections 17-400, 18-106(d), 19-108(c), and Sideletter No. 15 of the Basic Agreement.  True and correct copies of Sections 17-400, 18-106(d), 19-108(c), and Sideletter No. 15 of the 2017 Basic Agreement are attached hereto, respectively, as Exhibits "I" through "L."

11.    Section 17-400 of the Basic Agreement provides, in pertinent part, as follows:

"With regard to audits conducted by the Guild, sometimes in conjunction with other labor organizations, the Employer shall provide access to its books and records which pertain to its obligation under the BA to pay residuals. Such documents shall be made available for the audit at the Employer's business officers or other place or places where such records are customarily kept." (Exhibit "I")

12.    Section 18-106(d) of the Basic Agreement provides, in pertinent part:
… The Employer shall make available for inspection by the Guild all distributor's statements and exhibitor's statements which are available to the Employer insofar as they relate to such Employer's gross, and all the financial terms of contracts pertaining to such Employer's gross, and the Guild shall have the right, at reasonable times, to examine the books and records of the Employer as to such Employer's gross pertaining to such distribution of any Such Picture, at whatever place or places such records are customarily kept by the Employer. (Exhibit "J")

---

[1] The DGA is no longer seeking audit access for the motion picture "Dallas Buyers Club" and does not seek an Order compelling arbitration with regard to that motion picture project.

13.     Section 19-108(c) of the Basic Agreement provides, in pertinent part, as follows:

>"On request, Employer shall make available to the Guild or
>Pension Plan all accounting statements delivered by a distributor or by
>a subdistributor to the Employer, but only insofar as such statements
>relate to the Employer's gross. The Guild or Pension Plan shall have
>the right, at reasonable times, to examine the books and records of
>Employer insofar as they relate to Employer's gross." (Exhibit "K")

14.     Pursuant to Sideletter No. 15 to the Basic Agreement, Section 5.C., the Employer is required to provide DGA with "unredacted copies of all corollary distributor's, sub-distributor's, and exhibitor's statements relating to the reported 'Employer's gross'" for exploitation of covered pictures in New Media or on a multichannel video programming distributor (MVPD) ad-based video on demand (AVOD) service. (Exhibit "L")

15.     In each of their several Guaranty Agreements (attached hereto as Exhibits "C" through "H"), Respondents agreed to guarantee the performances of the Employers of all terms and obligations under the BA, and any all amendments thereto and replacements therefore relating to the film project ("Picture") that is the subject of the Guaranty Agreement.

16.     Further, in each of said Guaranty Agreements, Respondents agreed that "all disputes based upon, arising out of or relating in any way directly or indirectly to, this Guaranty Agreement shall be submitted to arbitration in accordance with the arbitration provisions of the DGA Agreements and any amendment thereto." (Exhibits "C" through "H")

//
//
//
//

17.    On September 12, 2019, the DGA served the Respondents with its arbitration demand, entitled, "Notice of Claim and Arbitration Claim ("Claim"), a true and correct copy of which is attached hereto as Exhibit "M."[2]

18.    On September 18, 2019, Respondents sent the DGA their Response to the DGA's Claim ("Response"), objecting to the sufficiency of the Claim.  A true and correct copy of the Response is attached hereto as Exhibit "N."

19.    The BA provides a procedure for selecting an arbitrator to hear disputes. Section 2-304 ("Selection of the Arbitrator") of 2017 Basic Agreement (Exhibit "A") provides, in pertinent part, as follows:

> (a)    Within ten (10) business days following service of the demand for arbitration, or within such additional time as the parties mutually agree upon, the parties will attempt to mutually agree upon an Arbitrator. If the parties do not mutually agree upon an Arbitrator, the Arbitrator next in rotation on an Employer-by-Employer basis from the following list of persons shall be automatically assigned to the arbitration. The parties' mutual selection of an Arbitrator shall not affect the rotation of Arbitrators.
>
> (1)    The Los Angeles list of Arbitrators shall be as follows:
> Norman Brand
> Mark Burstein
> Douglas Collins Dixon Dem
> William B. Gould IV
> Joel Grossman
> Andria Knapp
> Kenneth Perea

---

[2] See Footnote 1, *supra*.

Michael Prihar

Michael Rappaport

Barry Winograd

***

From July 1, 2017 to and including December 31, 2018, the Arbitrator shall be selected from the panels set forth in subparagraphs (a)(l) and (2) above, as applicable, in rotation on an Employer-by-Employer basis starting from the top of the list down and, during the remainder of the term of this BA, the Arbitrator shall be selected in rotation on the same basis, starting from the bottom of the list up.

      (b)    If no person on the list is available to hear the dispute, an Arbitrator shall be mutually selected by the Guild and the Employer. If they fail to agree, the Federal Mediation and Conciliation Service shall select the Arbitrator.

      (c)    If more than one Employer is named as a respondent in any arbitration complaint, the Arbitrator selected shall be the one next in line from the list of the Employer most recently a party to any arbitration.

      (d)    During the ten (10) business days or additional time mentioned in subparagraph (a) above, the claimant(s) and the respondent(s) shall each have the right to exercise two (2) peremptory challenges to the four (4) Arbitrators whose names are next in order on the list immediately following the name of the Arbitrator last selected.

20.    Between September 19 and October 7, 2019, the DGA engaged in numerous communications with Respondents in an effort to select an arbitrator. Throughout that time, Respondents repeatedly refused to engage in the peremptory challenge process set forth in Section 2-304(d) of the 2017 Basic Agreement.

Finally, on October 8, 2019, DGA counsel wrote Respondents via email as follows:

> Despite numerous emails requesting to engage in the strike through process pursuant to Basic Agreement Paragraph 2-304, you have refused to engage in the process. Having not received any response to my email yesterday inviting you to engage in the arbitrator selection process, the DGA hereby selects the next arbitrator in rotation: Arbitrator [Barry] Winograd. We will inform the Arbitrator and request the soonest available hearing dates. Thank you.

A true and correct copy of said October 8, 2019 email is attached hereto as Exhibit "O."

21. On October 10, 2019, after reviewing the Claim and the Response thereto, Arbitrator Winograd proposed that the parties address the issue of arbitrability raised in the Response through briefs and witnesses (if necessary). See Exhibit "P" hereto)

22. On October 14, 2019, Respondents objected to Mr. Winograd's authority as arbitrator. See Exhibit "Q" hereto.

23. Thereafter, on October 14, Arbitrator Winograd responded as follows:

> Based on the respondent's objection to any communications in my capacity as arbitrator, and absent an agreement by the parties, I will refrain from further activity absent a court order compelling arbitration.

(See Exhibit "Q" hereto)

24. In an effort to move beyond the stalemate after further unsuccessful email exchanges between the parties, DGA counsel wrote Respondents' in-house attorney via email on November 7, 2019 as follows:

> …[B]ased on prior communications from Voltage and its stated opposition, Voltage seems to be arguing that the panel of arbitrators

listed in Article 2 of the DGA Basic Agreement (to which Voltage voluntarily agreed to be bound pursuant to its various Guaranty Agreements) are not acceptable because DGA has experience with these arbitrators, which Voltage asserts could lead these arbitrators to have a bias in favor of the DGA.

To be clear, while the DGA firmly disagrees with Voltage's argument, in the interest of avoiding costly litigation to both sides, I would like to propose either Arbitrator Brand and Arbitrator Knapp as options to hear this claim, both of whom are on the arbitrator panel in Article 2 of the BA. Both Arbitrators Knapp and Brand were only recently added to the DGA panel in 2017. Neither arbitrator has heard any DGA case. Arbitrator Knapp confirmed this in her email response to Ms. Dunn on October 8, 2019, wherein she also enclosed her resume (attached).[3] Merely to simplify matters, and not because the DGA is in any way obligated to provide this to you, enclosed please find Arbitrator Brand's CV, which we downloaded from his public website. The only information we have on either arbitrator is what is available publicly, and accessible to Voltage equally.

If neither Arbitrator Knapp or Arbitrator Brand is agreeable to your client, then we will go ahead with our motion to compel arbitration. However, we will be advising the court that Voltage's arguments are meritless and not made in good faith, as we tried to work towards a solution and accommodate Voltage's arguments by offering two arbitrators that have never heard a DGA case.

A true and correct copy of said November 7, 2019 email is attached hereto as Exhibit "R."

---

[3] Parenthetical in original email.

25.     Respondents replied via email on November 14, 2019:

"Good luck with obtaining your motion to compel; we look forward to receiving it."

A true and correct copy of said November 14, 2019 email is attached hereto as Exhibit "S."

26.     As of the filing of the instant Petition, the grievance had still not been resolved, the DGA has still not been granted audit access, and Respondents have still not agreed to select an arbitrator and proceed to arbitration with the DGA.

27.     A complaint, dispute or controversy exists in which the DGA claims that Respondents have breached the obligations under the BA, and as assumed by them under the terms of their Guaranty Agreements.

28.     Respondents have not agreed and will not agree to select an arbitrator or submit the grievance to arbitration pursuant to the Basic Agreement and their Guaranty Agreements.

29.     Respondents' failure to proceed to arbitration on the grievance is without excuse, without merit, unjustified, dilatory, frivolous and done in bad faith, vexatiously and/or for oppressive reasons.

30.     The DGA has been forced to retain the Law Firm of Schwartz, Steinsapir, Dohrmann & Sommers LLP to bring this Petition to enforce its contractual rights to compel Respondents to arbitrate the grievance.

//
//
//
//
//
//
//
//

1    WHEREFORE, the DGA prays for relief as follows:

2    1.    For an Order of the Court compelling Respondents to submit the

3    above-mentioned grievance to arbitration before Arbitrator Barry Winograd

4    pursuant to the terms of the Basic Agreement and Respondents' Guaranty

5    Agreements with the DGA;

6    2.    For its reasonable attorneys' fees;

7    3.    For costs of suit incurred herein; and

8    4.    For such other and further relief as this Court deems just and proper.

9

10   DATED:  May 13, 2020                Respectfully submitted,

11                                       David Dreyfus, General Counsel
                                         Michelle Kim, Assistant General Counsel
12                                       DIRECTORS GUILD OF AMERICA, INC.

13                                       Michael R. Feinberg, Esq.
                                         SCHWARTZ, STEINSAPIR, DOHRMANN
14                                       & SOMMERS LLP

15                                       By /s/ Michael R. Feinberg
                                              Attorneys for Petitioner
16                                         Directors Guild of America, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

# INDEX OF EXHIBITS

| Exhibit | Description | Page |
|---|---|---|
| A | Article 2 to 2017 Basic Agreement | 00014 |
| B | Grievance, 8-30-19 | 00026 |
| C | Guaranty Agreement – Charlie Countrymen | 00031 |
| D | Guaranty Agreement – The Cobbler | 00034 |
| E | Guaranty Agreement – The Company You Keep | 00038 |
| F | Guaranty Agreement – Fathers & Daughters | 00042 |
| G | Guaranty Agreement – Hurt Locker | 00046 |
| H | Guaranty Agreement – Killer Joe | 00050 |
| I | Article 17-400 to 2017 Basic Agreement | 00053 |
| J | Article 18-106 to 2017 Basic Agreement | 00054 |
| K | Article 19-108 to 2017 Basic Agreement | 00057 |
| L | Sideletter 15, Paragraph 5 to the 2017 Basic Agreement | 00060 |
| M | Arbitration Claim, 9-12-19 | 00061 |
| N | Voltage Response to Claim, 9-18-19 | 00070 |
| O | Kim email to Dunn, 10-8-19 | 00072 |
| P | Winograd Email, 10-8-19 | 00073 |
| Q | Dunn-Winograd email chain, 10-14-19 | 00074 |
| R | Kim email to Walsh, 11-7-19 | 00078 |
| S | Dunn email to Kim, 11-14-19 | 00082 |

PETITION FOR ORDER COMPELLING ARBITRATION PURSUANT TO COLLECTIVE BARGAINING AGREEMENT